```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>     v.<br><br>JUAN ALBERTO MEJIA | HONORABLE JOSEPH E. IRENAS<br><br>CRIMINAL ACTION NO. 07-650<br><br>**OPINION** |

**APPEARANCES:**

Jason M. Richardson, Esq.
Office of the United States Attorney
401 Market Street
P.O. Box 1427
Camden, NJ 08101
     Counsel for United States of America

Juan Alberto Mejia, *pro se*
Reg. No. 41395-050
CI Moshannon Valley
Correctional Institution
555 I Cornell Drive
Philipsburg, PA 16866

**IRENAS**, Senior District Judge:

Presently before the Court are Motions by Defendant Juan Alberto Mejia ("Defendant") for the Return of Personal Property and for Immediate Deportation.  For the reasons stated herein, the Court will deny Defendant's motions.

**I.**

The Court will review the background of this case only insofar as necessary to resolve the present motions.  In early 2007, Defendant was the target of surveillance by the Camden High Intensity Drug Trafficking Area ("HIDTA") Task Force.  On February 16, 2007, Judge Samuel D. Natal of the Superior Court of

New Jersey issued a warrant for Defendant's arrest.  On February 24, 2007, Defendant was a passenger in a Ford Econoline van traveling on the New Jersey Turnpike.  Acting on information supplied by HIDTA, New Jersey State Troopers stopped the van and arrested Defendant.

A search warrant was issued for the Ford van by Judge Natal. That warrant was executed by state law enforcement officers and United States Drug Enforcement Agency ("DEA") agents.  The search of the van revealed a kilogram of cocaine under its passenger seat.

Defendant was originally charged with state drug offenses. The state charges were dismissed in May, 2007, when the federal government initiated its prosecution of Defendant.  On August 2, 2007, Defendant pled guilty to a two-count federal information for (1) conspiracy to distribute and possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846 and (2) illegal re-entry by a previously removed alien in violation of 8 U.S.C. § 1326.  This Court sentenced Defendant to a 37 month term of incarceration.

Defendant now moves under Fed. R. Crim. P. 41(g) for the return of his personal property.  According to Defendant's moving papers, the following items were seized from him on or about the date of his arrest, and should now be returned to his possession: eight cellular telephones, one bracelet, one GPS navigation

system, one wallet, one portable video game system, and $170 in cash.  Defendant also moves for immediate deportation, citing 8 U.S.C. § 1252(h)(2)(a) as statutory authority for his request.

## II.

### A.

"Property seized by the government as part of a criminal investigation 'must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture.'" *United States v. Albinson*, 356 F.3d 278, 280 (3d Cir. 2004) (quoting *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999)).  Following the conclusion of criminal proceedings, the burden is on the Government "to demonstrate that it has a legitimate reason to retain the seized property."  *Id.* at 280 (citing *Chambers*, 192 F.3d at 377).  Pursuant to Fed. R. Crim. P. 41(g):

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

In a case where the Government asserts it no longer has the property Defendant seeks returned, the Court engages in a two-step inquiry.  *Albinson*, 356 F.3d at 281.  First, the Court "must determine, in fact, whether the government retains possession of

3

the property." *Id.* (quoting *Chambers*, 192 F.3d at 378).  If the Court "finds that the government no longer possesses the property, [it] must determine what happened to the property." *Id.* (quoting *Chambers*, 192 F.3d at 378).

The Court is not required to "conduct an evidentiary hearing on every Rule 41(g) motion." *Id.* at 281.  Rather, the Court should "receive evidence on any factual issue necessary" to resolve a motion arising under Rule 41(g).  *Id.* at 282.  The Court's method of determining whether the government retains possession of property must rest "on a firmer basis than the government's unsubstantiated assertions that it 'no longer possesses the property at issue.'" *Id.* at 282 (quoting *Chambers*, 192 F.3d at 377-78).  A sufficient basis for factual findings can include "affidavits or documentary evidence, such as chain of custody records[.]"  *Id.*  An evidentiary hearing is only required to resolve "any disputed issue of fact necessary to the resolution of the motion[.]"  *Id.* (quoting *Chambers*, 192 F.3d at 378).

**B.**

Here, the Government argues that Defendant's Rule 41(g) motion should be denied because the United States never seized the property that Defendant seeks returned.  Relying on an affidavit submitted by Special Agent Darren DelViscio of the DEA, the Government asserts that none of the property listed in

4

Defendant's motion was seized from Defendant or the Econoline van in which he was a passenger at the time of his arrest.

Agent DelViscio's affidavit indicates that he reviewed the case file associated with the federal action against Defendant, and determined that the DEA is not in possession of any property seized from Defendant on February 24, 2007.  As an exhibit in support of his affidavit, Agent DelViscio provides an investigative report detailing the results of the search warrant executed on the Ford Econoline van on February 24, 2007.  That investigative report indicates that the only item of evidentiary value seized from the van was a kilogram of cocaine.

Based on a review of the record, the Court finds no indication that the federal government ever possessed the items Defendant seeks returned.[1]  Aside from the bare allegations in his motion, Defendant provides no basis for the Court to conclude otherwise.  Defendant's motion for the return of personal property will be denied.[2]

---

[1] The second step of the Court's inquiry under Rule 41(g) — determining what happened to a Defendant's property — presupposes that the property was at one time in the Government's possession.  Here, there is no indication that the Government ever took possession of Defendant's items.

[2] Defendant's motion will be denied without prejudice.  If Defendant can produce documents or other proof that the federal government took possession of the property he seeks, he may file another Rule 41(g) motion and should attach those proofs as exhibits to his motion.

The background of Defendant's prosecution suggests the possibility that property was seized from his person at the time of his arrest by New Jersey State Troopers.  Assuming *arguendo* that the property Defendant seeks was indeed seized by New Jersey State Troopers at that time, his current Rule 41(g) motion still fails.

A district court in this circuit has identified three instances when Rule 41 may be used to obtain the return of property seized by non-federal

**III.**

Defendant next moves for immediate deportation, citing 8 U.S.C. § 1252(h)(2)(a) as statutory authority for his request. As the Government notes, the former 8 U.S.C. § 1252(h)(2)(a) is currently codified as 8 U.S.C. § 1231(a)(4)(B). *See United States v. Marin-Castaneda*, 134 F.3d 551, 556 n.3 (3d Cir. 1998). Thus, the Court will treat Defendant's *pro se* motion as one seeking immediate deportation pursuant to § 1231(a)(4)(B).

In general, the Attorney General is not permitted to remove an imprisoned alien until his sentence of imprisonment is completed. *See* 8 U.S.C. § 1231(a)(4)(A). However, an exception to the statute permits the Attorney General to remove a nonviolent offender prior to the completion of a term of imprisonment, under certain circumstances. *See* 8 U.S.C. § 1231(a)(4)(B).

As the Government correctly notes, 8 U.S.C. § 1231(a)(4)(B) "does not create a private right of action that would allow

---

authorities:  "1) actual federal possession of the property forfeited by the state; 2) constructive federal possession where the property was considered evidence in the federal prosecution; or 3) the property was seized by state officials acting at the direction of federal authorities in an agency capacity." *United States v. Gulley*, No. 3:2005-16-1, 2007 WL 870118, at *2 (W.D. Pa. Mar. 16, 2007) (quoting *Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999)).

Here, there is no indication that the federal government was in actual possession of the property Defendant seeks, or that the property was used as evidence in the federal prosecution.  Nor were the New Jersey State Troopers who arrested Defendant acting as agents of federal authorities — that arrest was in fulfillment of a state arrest warrant.  Federal criminal proceedings were not initiated against Defendant until months after his arrest by state authorities.

[Defendant] to compel the Attorney General to act." *United States v. Fernandez*, Crim. No. 99-256-03, 2007 WL 2596907, at *1 (E.D. Pa. Sep. 5, 2007) (quoting *Thye v. United States*, 109 F.3d 127, 129 (2d Cir. 1997)); *see also Burgos v. DeRosa*, No. 03-4139, 2005 WL 2205814, at *4 (D.N.J. Sep. 8, 2005) ("Every federal court to consider [8 U.S.C. § 1231(a)(4)] has determined that the statute vests in the Attorney General the sole discretion and authority to make early removal decisions and that no private right of action for immediate removal exists."). In addition, "the Third Circuit has noted that 8 U.S.C. § 1231(a)(4)(B) provides authority to the Attorney General, but not to the judiciary, to decide whether to remove an alien prior to the expiration of his federal sentence for a nonviolent offense." *United States v. Garcia*, No. 03-6322, 2005 WL 697476, at *1 (E.D. Pa. Mar. 23, 2005) (citing *Marin-Castaneda,* 134 F.3d at 556). Thus, Defendant's motion for immediate deportation will be denied.

## IV.

For the reasons stated above, Defendant's Motions will be denied. The Court will issue an appropriate Order.

Dated:  May   27  th, 2009

                                            s/ Joseph E. Irenas
                                      **JOSEPH E. IRENAS, S.U.S.D.J.**